IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION |
| JAMIL THOMAS | NO. 21-137 |

**Pappert, J.**                                                                                                               **August 23, 2024**

### MEMORANDUM

Jamil Thomas pleaded guilty to a four-count indictment charging him with gun and drug related offenses and was sentenced to 165 months' incarceration. He later filed a *pro se* motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, contending he received ineffective assistance of counsel. He claims he would not have pleaded guilty to possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) had his lawyer properly advised him of the evidence necessary to convict him on that count. The Court denies the motion.

I

On January 28, 2021, FBI agents and Philadelphia Police Department officers executed a search warrant on Thomas's house in Philadelphia. (Plea Mem. p. 4, ECF No. 25)[1]; (PSR ¶¶ 8, 11.) Thomas was arrested outside, and after being advised of and waiving his *Miranda* rights, said "everything illegal" in the house was his. (Plea Mem. p. 4); (PSR ¶¶ 8, 10.) While clearing the house, the FBI agents found "drugs, firearms, and large amounts of money in various locations throughout the residence." (PSR ¶¶ 8–9); *see also* (Plea Mem. p. 4)

---

[1]     Page numbers are those assigned by ECF unless otherwise specified.

Upon executing the warrant, Philadelphia police seized eight guns, including four loaded pistols, a loaded long rifle revolver, another pistol and two semiautomatic rifles. (Plea Mem. pp. 4–5); (PSR ¶ 11.) They also seized several high-capacity magazines, ammunition boxes, loose ammunition cartridges and approximately $281,579.65 in cash. (Plea Mem. pp. 5–6, 9); (PSR ¶¶ 12–16.) Finally, they seized marijuana, crack cocaine, Xanax, Oxycodone, Adderall, heroin, methamphetamine, cocaine, baggies and packaging material and several digital scales. (Plea. Mem. pp. 6–7); (PSR ¶ 17.) Thomas was taken to the FBI's Philadelphia field office where he agreed to an interview after again being advised of his rights and signing a waiver form. (Plea Mem. pp. 7–8); (PSR ¶ 18.) During the interview, Thomas stated he was selling the drugs and that he had purchased a bag of guns off the street for $5,000, and that he was aware he was a convicted felon who was not allowed to possess firearms. (Plea Mem. p. 8); (PSR ¶¶ 19–21.) He also admitted he "purchased the guns to protect the drugs and money he had in his home." (PSR ¶ 20); *see also* (Plea Mem. p. 9.)

On April 6, 2021, a grand jury returned a four-count indictment charging Thomas with possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)-(D) (Count I); possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Count II); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count III); and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(2) (Count IV). (Plea Mem. pp. 1–3); (PSR ¶ 1); (Judgment p.1, ECF No. 39.) After initially pleading not guilty to the charged offenses, Thomas changed his plea to guilty at a hearing held on August 31, 2022. (Change of Plea Hr'g Tr. 21:2–25, ECF No. 44.) He was sentenced

on September 12, 2023. *See* (Judgment.) Five months later, he filed a *pro se* § 2255 motion, contending that during plea negotiations his lawyer improperly instructed him on the evidence needed to prove a violation of § 924(c)(1)(A)(i). (Mot. pp. 4–5, 7, ECF No. 41.) More specifically, he alleges his lawyer incorrectly advised him that the guns' mere presence in the house was sufficient to prove a violation. (*Id.* at 4.) "Had plea counsel advised [him] properly," he claims, "[he] would have never [pleaded] to a 924(c) count." (*Id.* at 15.)

## II

Section 2255 permits a prisoner sentenced by a federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" where (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If the Court finds the sentence was imposed without jurisdiction, was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, it may, as appropriate, vacate the judgment, resentence the prisoner or grant the prisoner a new trial. *Id.* § 2255(b).

The Court must hold an evidentiary hearing unless the motion, case filings and record "conclusively show that the prisoner is entitled to no relief." *Id.* In this case, no hearing is necessary.

## III

Ineffective assistance of counsel claims are governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on such a claim,

the petitioner must show (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness," and (2) he "suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687). The Court may address either prong first and need not address both if the petitioner "makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[I]t is preferable to avoid passing judgment on counsel's performance when possible." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

To satisfy *Strickland*'s prejudice prong, a petitioner alleging counsel's ineffectiveness led him to plead guilty must demonstrate "a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To do so in most cases, the petitioner "must convince the [C]ourt that [an alternative plea decision] would have been rational under the circumstances." *Jackson v. Superintendent Graterford SCI*, 721 F. App'x 128, 132 (3d Cir. 2018) (second alteration in original) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). Where, as here, "the [petitioner's] decision about going to trial turns on his prospects of success and those are affected by the attorney's error," the petitioner must show "he would have been better off going to trial." *Lee v. United States*, 582 U.S. 357, 365 (2017). For instance, if the petitioner alleges counsel failed to advise him of a potential affirmative defense, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

IV

Thomas cannot show prejudice because he cannot show it would have been rational for him to go to trial on the § 924(c). Whether a defendant's possession of a firearm was in furtherance of drug trafficking activities "is a sufficiency of the evidence question." *United States v. Sparrow*, 371 F.3d 851, 852 (3d Cir. 2004) (citations omitted). The "mere presence" of a gun is not enough to sustain a conviction under § 924(c). *Id.* at 852–53.

Instead, the evidence must show "possession of the firearm advanced or helped forward a drug trafficking crime." *Id.* at 853. This determination depends on several "nonexclusive factors," specifically the type of drug activity being conducted, the accessibility of the firearm, the type of weapon, whether the weapon is stolen, whether the weapon is legally or illegally possessed, whether it is loaded, its proximity to drugs or drug profits and the circumstances under which it is found. *Id.* (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000)). Violations are ordinarily proven through this sort of circumstantial evidence because "[i]n most cases, a defendant will not confess to possessing the firearm to facilitate a drug crime." *United States v. Maya*, 966 F.3d 493, 500 (6th Cir. 2020).

Thomas now claims he would not have pleaded guilty had he known all this. But by the time he faced the choice of how to plead, he had already confessed to the crime. He told the FBI agents, on the day of his arrest, that he purchased the guns to "protect the drugs and money in his home." (PSR ¶ 20); *see also* (Plea Mem. p. 9) (Thomas "stated that he purchased guns to protect the drugs and money he had at his residence."). At his change of plea hearing, Thomas confirmed he had read the factual

basis for the plea and affirmed its accuracy. (Change of Plea Hr'g Tr. 12:24–13:9.) And he did not object to the Presentence Investigation Report at his sentencing hearing either.

In short, Thomas admitted he bought the guns to further his drug trafficking activities. *See Sparrow*, 371 F.3d at 852; *United States v. Mainor*, 393 F. App'x 10, 19 (3d Cir. 2010) ("[A] possessed gun can forward a drug-trafficking offense by providing the dealer, his stash or his territory with protection" (quoting *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005).); *Maya*, 966 F.3d at 499–501. Moreover, the eight guns seized were illegally possessed, five of them were loaded, and several were hidden behind the couch in the basement, close to where "evidence of drug distribution," such as baggies, packaging material and scales were found. *See Sparrow*, 371 F.3d at 853; (PSR ¶¶ 11, 17); (Plea Mem. pp. 5–7.)

It would not have been rational for Thomas to proceed to trial on a crime he'd already confessed to, and he would have been no better off going to trial instead of pleading guilty. *See Padilla*, 559 U.S. at 372; *Lee*, 582 U.S. at 365; *United States v. Harris*, No. 20-14749, 2024 WL 659342, 2024 U.S. Dist. LEXIS 27648, at *2–3, 16–18 (D.N.J. Feb. 16, 2024) (explaining that a petitioner who had "not shown that it would have been rational under the circumstances" to go to trial on a § 924(c)(1)(A)(i) charge could not show "he was prejudiced by counsel's advice").

V

A § 2255 petitioner can only appeal the denial of his claims if he obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right." *Id.* § 2253(c)(2). To do so, he must demonstrate that jurists of reason would find the Court's assessment of his claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability is not warranted here because reasonable jurists would not debate the Court's ruling and Thomas has not made a substantial showing that his constitutional rights were violated.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.